# United States Court of Appeals for the Federal Circuit

---

**STEVEN PREMINGER,**
*Petitioner,*

v.

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent.*

---

2009-7044

---

On petition for review pursuant to 38 U.S.C. Section 502.

---

Decided: January 26, 2011

---

SCOTT J. RAFFERTY, Attorney at Law, of Washington, DC, argued for petitioner.

JANE W. VANNEMAN, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director.

---

Before PLAGER and MOORE, *Circuit Judges.*[*]

Concurring opinion filed by *Circuit Judge* PLAGER.

Per Curiam

By law this court has authority to review directly certain specified actions, when challenged, of the Secretary of Veterans Affairs. 38 U.S.C. § 502. Pursuant to the statute, Steven Preminger seeks review by the court of the Secretary's denial of his petition for rulemaking. Such petitions to the Secretary are authorized by 5 U.S.C. § 553(e). As part of his case, Mr. Preminger also challenges the validity of an internal directive issued by the Veterans Health Administration ("VHA") that was relied upon by the Secretary in his denial of Mr. Preminger's request.

This case raises an issue of first impression for this court. The issue is whether § 502 confers jurisdiction on the court to review a *denial* by the Secretary of a petition for rulemaking—an action not expressly provided for by our review statute. We address that question in Part II of this opinion. In Part III, having concluded that we have jurisdiction, we address the question of whether the Secretary employed reasoned decisionmaking in his denial of Mr. Preminger's petition.

## I. BACKGROUND

Mr. Preminger is the chairman of the Santa Clara County, California, Democratic Central Committee. In 2004, he visited a building at the Veterans Affairs ("VA")

---

[*]    Paul R. Michel, then Chief Judge, was a member of the panel that heard oral argument but did not participate in this decision due to his retirement on May 31, 2010.

Medical Center in Menlo Park, California, intending to conduct voter registration for veterans who were patients there. Mr. Preminger was not allowed to engage in that activity and he subsequently pursued various legal actions in an attempt to gain access to Department of VA facilities to provide voter assistance to veterans.

One action taken by Mr. Preminger was a petition, previously filed with this court, again for review of a Secretarial action pursuant to 38 U.S.C. § 502. In that petition Mr. Preminger directly challenged the constitutionality of a VA regulation, 38 C.F.R. § 1.218(a)(14), that governs the conduct of visitors on property under the charge and control of the VA. *Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299 (Fed. Cir. 2008) ("*Preminger I*"). The regulation among other things prohibits visitors to VA property from engaging in "demonstrations" unless authorized by the head of the facility. § 1.218(a)(14)(i). "Unauthorized demonstrations" is defined to include "partisan activities, i.e., those involving commentary or actions in support of, or in opposition to, or attempting to influence, any current policy of the Government of the United States, or any private group, association, or enterprise." § 1.218(a)(14)(ii).

In deciding this earlier petition for review, we rejected Mr. Preminger's argument that the regulation on its face violates the First Amendment. We concluded that VA medical centers are nonpublic fora, *Preminger I*, 517 F.3d at 1311-14, and that the restriction on "partisan activities" by visitors to those facilities is both reasonable and viewpoint neutral. *Id.* at 1315. We also rejected his allegation that the regulation is overbroad. *Id.* at 1316-18. As part of the reasonableness inquiry, we concluded that the discretion vested in VA officials to determine the disruption that would be caused by a demonstration was

necessary in order for the VA to carry out its mission of providing health care services for veterans. *Id.* at 1315. Subsequently, and in response to Mr. Preminger's petition for panel rehearing, we added language to the opinion explaining in further detail our conclusion that the regulation does not grant the VA "standardless, unbridled discretion." *Id.* at 1303-04, 1315-16.

In addition to that petition for direct review in this Circuit, Mr. Preminger pursued a parallel course in the Ninth Circuit, with essentially the same result. He filed suit in the United States District Court for the Northern District of California, challenging on First Amendment grounds the VA's refusal to allow him to register voters at the Menlo Park Medical Center, and seeking an injunction against enforcement of § 1.218(a)(14). The district court in due course concluded that the VA properly characterized Mr. Preminger's voter registration efforts as "partisan activities" within the meaning of the regulation and that the VA's application of the regulation to him was both reasonable and viewpoint neutral and therefore did not violate the First Amendment. *See Preminger v. Peake*, 552 F.3d 757, 762 (9th Cir. 2008). The Ninth Circuit affirmed. *Id.* at 764-68.

While all this was going on, Mr. Preminger in 2006 requested the Secretary to rescind, amend, or waive the "partisan activities" clause of § 1.218(a)(14); the Secretary denied the request. Through his attorney, Mr. Preminger in November 2007 sought reconsideration of the Secretary's denial. As part of his reconsideration request, Mr. Preminger indicated that, if the Secretary decided not to reconsider the earlier decision, he further requested that, pursuant to 5 U.S.C. § 553(e), the Secretary "initiate a rulemaking to define how veterans who reside on VA campuses will receive assistance in registering and vot-

ing." J.A. 4. The Secretary responded in December 2007, reiterating that the VA would not rescind, amend, or waive the provisions of § 1.218(a)(14), but he indicated that the VA would undertake consideration of Mr. Preminger's petition that the VA initiate additional rulemaking regarding voter assistance to veterans.

Subsequently, in October 2008, the Secretary issued a denial of Mr. Preminger's petition for rulemaking. Citing 38 C.F.R. § 17.33(a)(4)(iv), the Secretary asserted that "no patient in the VA medical care system may be denied the right to register and vote as provided under state law." J.A. 1. The Secretary then described VHA Directive 2008-053, an "internal guidance" document issued in September 2008, which outlined the roles and responsibilities of VA facility directors in providing voter assistance to veterans. In the Secretary's view, VA regulations, as implemented by facility directors according to Veterans Health Administration ("VHA") Directive 2008-053, were sufficient to ensure that VA patients receive all necessary voting assistance. The Secretary explained that he therefore would not undertake additional rulemaking concerning VA patients' right to register and vote.

Mr. Preminger now petitions for review of the Secretary's October 2008 denial of his petition for rulemaking.

## II. JURISDICTION

### A. The Scope of Section 502

In his opening brief, Mr. Preminger simply states that 38 U.S.C. § 502 is the basis for our jurisdiction to review the Secretary's action in denying his petition for rulemaking. Section 502 reads in relevant part:

An action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers is subject to judicial review. Such review shall be in accordance with chapter 7 of title 5 and may be sought only in the United States Court of Appeals for the Federal Circuit.

The referenced sections 552(a)(1) and 553 of title 5 are part of the Administrative Procedure Act ("APA"), and deal primarily with procedures for agency rulemaking. Section 552(a)(1), now also incorporated as part of the Freedom of Information Act ("FOIA"), requires agencies to publish a broad array of information in the Federal Register. This publication requirement applies to agency documents related to rulemaking, such as "rules of procedure, . . . substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency[,] and . . . each amendment, revision, or repeal of the foregoing." 5 U.S.C. § 552(a)(1).

Section 553 describes, inter alia, the procedural requirements an agency must follow before adopting certain kinds of rules. An agency wishing to adopt a new rule under this section must publish a notice including "either the terms or substance of the proposed rule or a description of the subjects and issues involved," § 553(b), and "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation," § 553(c). Not surprisingly, this is known as "notice-and-comment" rulemaking. The notice-and-comment requirements of § 553 do not apply to the full panoply of agency actions that are found in documents required to be published in the Federal Register under

§ 552(a)(1); specifically, notice-and-comment procedures do not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." § 553(b).

In determining what rules are within the scope of these APA provisions, the terminology can be confusing. Sorting through the meaning of the often overlapping terms used in these statutes has been a major occupation among academics specializing in this area, and this has produced a wealth of explanatory material.[1] Courts have used various terms to describe what is or is not covered by the different statutes. Although our court sometimes refers to rules subject to notice-and-comment rulemaking as "substantive rules,"[2] modern terminology, used in some of our cases,[3] has adopted the term "legislative rules" for

---

[1]    Among the writings attempting to explain the way the APA rulemaking provisions are to be understood, one of the most succinct, and therefore most useful, is Robert A. Anthony, *A Taxonomy of Federal Agency Rules*, 52 Admin. L. Rev. 1045 (2000). However, as if the terminology was not complex enough, Professor Anthony adds a new term, "spurious rules," to describe certain kinds of agency rulemaking actions. In addition to the treatises cited later in the text, another useful source is William Funk, *A Primer on Nonlegislative Rules*, 53 Admin. L. Rev. 1321 (2001), critiquing Professor Anthony's new terminology, and commenting on other valuable resources resulting from an Interpretive Rules Symposium.

[2]    *See, e.g.*, *Coalition for Common Sense in Gov't Procurement v. Sec'y of Veterans Affairs*, 464 F.3d 1306, 1314 (Fed. Cir. 2006); *Paralyzed Veterans of Am. v. West*, 138 F.3d 1434, 1436 (Fed. Cir. 1998).

[3]    *See Nat'l Org. of Veteran's Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1374 (Fed. Cir. 2001) ("*NOVA*") (recognizing use of the term "legislative rule"); *Splane v. West*, 216 F.3d 1058, 1063 (Fed. Cir. 2000) (same).

the rules subject to § 553 procedures. *See* 1 Charles H. Koch, Jr., *Administrative Law and Practice* § 4:10[2] (3rd ed. 2010); 1 Richard J. Pierce, Jr., *Administrative Law Treatise* § 6.1 (5th ed. 2010). Correspondingly, the term "non-legislative rules" is used to describe collectively those rules that are exempt from notice-and-comment rulemaking, including those with labels such as "interpretive rules," "procedural rules," and "policy statements." Koch, *supra*, § 4.11. It is important to keep in mind that the Federal Register publication requirement of § 552(a)(1) applies both to legislative rules as well as certain non-legislative rules that are exempted from the rulemaking process set forth in § 553.

Though, as noted, this particular case raises a new issue for us, as a general proposition petitions brought under § 502 for direct review of actions by the Secretary are not new. Such petitions brought in this court, as for example the earlier Preminger petition, have for the most part been direct challenges to VA rules or to the process by which those rules were made. In several cases, petitioners have alleged that VA rules are substantively invalid because they are inconsistent with the statutes they purport to interpret.[4] Some petitioners, as Mr. Preminger did in his previous case before this court, *Preminger I*, 517 F.3d at 1308-19, have argued that rules are substantively invalid on constitutional grounds.[5]

---

[4] *See, e.g., NOVA*, 260 F.3d at 1377-80; *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 692-704 (Fed. Cir. 2000) ("*DAV*"); *Splane*, 216 F.3d at 1067-69.

[5] *See, e.g., Griffin v. Sec'y of Veterans Affairs*, 288 F.3d 1309, 1319-30 (Fed. Cir. 2002); *E. Paralyzed Veterans Ass'n, Inc. v. Sec'y of Veterans Affairs*, 257 F.3d 1352, 1356-59 (Fed. Cir. 2001).

A familiar complaint in § 502 cases has been that the VA failed to comply with the requirements of notice-and-comment rulemaking in issuing or repealing a rule.[6] Such cases require us to determine whether the challenged rule falls within the scope of legislative rules, to which the notice-and-comment rulemaking procedure of § 553 applies, or whether the rule is an interpretive rule, a general statement of policy, or a procedural rule, all of which are exempt from that process. *See* § 553(b). An agency's failure to comply with notice-and-comment procedures, when required, is grounds for invalidating a rule.[7]

### B.  The Jurisdiction Issue Raised by Mr. Preminger's Petition

Though in some cases our authority to exercise jurisdiction under § 502 is not subject to serious question, in other cases our authority to exercise jurisdiction over the matter has been vigorously challenged.  This is such a case—the Government argues we do not have jurisdiction to hear Mr. Preminger's petition.  As we explained above, § 502 provides jurisdiction over a challenge to an action of the Secretary if the action is one to which § 552(a)(1) or § 553 "refers."  In the typical case in which a petitioner challenges an agency action on substantive or procedural grounds, the issue regarding jurisdiction is whether the challenged action is a rule described in § 552(a)(1)—the publication requirement—or § 553—the notice and com-

---

[6]     *See, e.g.*, *Coalition for Common Sense*, 464 F.3d at 1318-19; *NOVA*, 260 F.3d at 1374-77; *Splane*, 216 F.3d at 1063-64; *Paralyzed Veterans*, 138 F.3d at 1436.

[7]     *Coalition for Common Sense*, 464 F.3d at 1318-19; *NOVA*, 260 F.3d at 1375 (citing *Auer v. Robbins*, 519 U.S. 452, 459 (1997)).

ment requirement—or whether it is some other type of agency action.

In this case, however, though Mr. Preminger in his petition for review puts in play the validity of VHA Directive 2008-053, the gravamen of his appeal is not the validity *vel non* of the Directive; rather, it is whether the Secretary's denial of his request for a rulemaking was proper. The right to petition for a rulemaking is provided by subsection (e) of § 553: "Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." Curiously, though this provision appears in § 553, it is unrelated to most of the other subsections of § 553, which describe the requirements for notice-and-comment rulemaking.

Because our jurisdiction under § 502 includes review of any action of the Secretary to which § 553 refers, it presumptively includes an action referred to in § 553(e). That subsection, however, "refers" only to the right to petition for a rulemaking. The jurisdictional question presented by Mr. Preminger's petition is whether our § 502 jurisdiction is limited to a case in which the petitioner is somehow denied "the right to petition." Mr. Preminger was not denied that right, indeed, he did petition. Or is it the case that the *denial* of the remedy being sought by petitioner—a new or amended rule—is also subject to our review. As noted earlier, this is a question of first impression in this court.

The Government's briefing on the jurisdiction question is confusing and largely unhelpful. The Government appears to believe that this court's jurisdiction over Mr. Preminger's petition turns on whether VHA Directive 2008-053, which the Secretary referenced in his denial letter, is a "substantive rule" subject to the notice-and-

comment requirements of § 553. Concluding that it is not, the Government asserts that we must lack jurisdiction over the appeal. Among other things, the Government's brief does not address the fact that an alternative basis for our § 502 jurisdiction, the Federal Register publication requirement under § 552(a)(1), applies not only to "substantive rules of general applicability," but also "statements of general policy" and "interpretations of general applicability." § 552(a)(1)(D). The Government's position that our review under § 502 is limited to legislative rules (the Government uses the old "substantive rules" terminology) reflects a lack of grasp of the APA, and is incorrect as a matter of law.

More importantly, the Government's argument that the jurisdictional issue raised by Mr. Preminger's appeal depends on how the Directive is characterized simply misapprehends the case before us. Mr. Preminger's assertion of jurisdiction arises not out of the Directive, but from the Secretary's action—his denial of Mr. Preminger's request for a rulemaking pursuant to § 553(e). The Government does not appear to recognize that § 553(e) can be a separate jurisdictional basis for review under § 502, distinct from the more typical challenge to a rule or the process by which a rule was made. The characterization of the Directive is irrelevant to the question of whether we have jurisdiction to review the Secretary's action denying the petition for rulemaking. Furthermore, unlike those portions of § 553 describing the notice-and-comment requirements that apply only to legislative rules, subsection (e) is not so limited. On its face the provision applies to "a rule" without qualification, a term that, contrary to the Government's view, encom-

passes, as the APA itself states, more than legislative rules.[8]

We return then to the question of whether a *denial* of a request for rulemaking made pursuant to § 553(e), as well as the right to make the request, falls within our jurisdictional reach. Other courts that have addressed this question, in particular the Court of Appeals for the District of Columbia, have concluded that an agency's decision to deny a petition for rulemaking is subject to judicial review under § 553(e). *See, e.g.*, *WWHT, Inc. v. FCC*, 656 F.2d 807, 809 (D.C. Cir. 1981) (holding that "an agency's denial of a rulemaking petition is subject to judicial review."). This position was affirmed in *Am. Horse Prot. Ass'n v. Lyng*, 812 F.2d 1 (D.C. Cir. 1987). There the court distinguished an intervening Supreme Court case, *Heckler v. Chaney*, 470 U.S. 821 (1985), in which the Supreme Court had held that an agency's refusal to undertake an enforcement action was presumptively unreviewable. The *American Horse* court concluded that a refusal to enforce is substantively different in important respects from a refusal to undertake a rulemaking, and that the latter remains subject to judicial oversight.[9] The Supreme Court recently reaffirmed this distinction in *Massachusetts v. EPA*, contrasting the reviewability of a denial of a petition for rulemaking with an agency's decision not to initiate an enforcement action,

---

[8]    The APA defines a "rule" as "the whole or a part of an agency document of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4).

[9]    *See also Defenders of Wildlife v. Gutierrez*, 532 F.3d 913 (D.C. Cir. 2008) (reviewing the denial of a petition for rulemaking).

which ordinarily is not subject to judicial review. 549 U.S. 497, 527 (2007).

In § 502, Congress gave the Federal Circuit exclusive jurisdiction over challenges to VA actions involving sections 552(a)(1) and 553. *See* H. R. Rep. No. 100-963 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5810. Absent that exclusive grant of jurisdiction to this court, these suits would be brought under the APA in another court where the established precedents cited above presumably would apply. It follows that, were it not possible for this court to review the Secretary's denial of a rulemaking petition pursuant to § 553(e), we would create a gap in the remedies available under the APA only for cases involving petitions to the Secretary of Veterans Affairs. Nothing in the statute, or in the legislative record of Congress when it assigned § 502 review responsibilities to our court, suggests any intent on the part of Congress to create or permit such a remedial gap to exist. Indeed, when Congress reported out § 502 it apparently contemplated that § 502 would provide for review of the Secretary's decision not to issue a rule as well as the decision to issue a rule. *See id.* at 5786 ("A decision to issue, or a failure to issue, a rule or other matter . . . would be reviewable in the United States Court of Appeals for the Federal Circuit.").

In light of the treatment given this question by other courts, and the underlying policies that support judicial review in this case, we hold that § 502 vests us with jurisdiction to review the Secretary's denial of a request for rulemaking made pursuant to § 553(e).

*C. Review of VHA Directive 2008-053*

There is one further issue with jurisdictional implications which must be addressed before we turn to the merits of Mr. Preminger's petition. As previously noted, Mr. Preminger in his challenge to the Secretary's denial of his request for a rulemaking questions the validity of VHA Directive 2008-053. This is the directive referenced by the Secretary in his ruling. Specifically, Mr. Preminger argues that the Directive is procedurally invalid because the VA did not follow the notice-and-comment procedures of § 553, and further failed to publish the Directive in the Federal Register in accordance with § 552(a)(1). He also argues that the Directive violates the First Amendment. As discussed, these are the types of procedural and substantive challenges typically raised in petitions for review under § 502.

Presumably Mr. Preminger's purpose in challenging the Directive's validity relates to whether the Secretary erred in denying the petition for rulemaking by relying on a purportedly invalid Directive. However, to the extent he seeks direct review of the Directive pursuant to § 502, his challenge is untimely. Under the rules of this court, an action for judicial review under § 502 "must be filed with the clerk within 60 days after issuance of the rule or regulation or denial of a request for amendment or waiver of the rule or regulation." Fed. Cir. R. 47.12; *see also DAV*, 234 F.3d at 690 (holding that date of issuance in Fed. Cir. R. 47.12(a) means the effective date of the rule). Mr. Preminger filed his petition for review on December 29, 2008, within sixty days of the Secretary's denial of his

request for rulemaking, but more than sixty days after the Directive was issued.[10]

Furthermore, a direct challenge to the Directive by Mr. Preminger would not satisfy another one of the requirements for review under § 502. Under Fed. Cir. R. 47.12(b), "[o]nly a person or persons adversely affected by the rule or regulation or rulemaking process may bring an action for judicial review." In addition, the action "must describe how the person or persons bringing the action are adversely affected." Fed. Cir. R. 47.12(c). The Government in its argument on jurisdiction points to this Rule, and asserts that Petitioner fails to satisfy these requirements, Gov't Br. 27, and therefore lacks standing in the case. *Id.* at 27 n.10.

The Government's brief treatment of the Rule 47 issue, and Petitioner's failure to address it at all, leaves a number of questions unanswered. The burden, however, was on the appellant to establish that the question of the Directive's validity is properly before us, and this he has failed to do. We conclude that on this record and under the rules applicable to it, a direct challenge to the validity of the Directive in the manner presented here is barred. (See the concurring opinion of Judge Plager for further discussion of the Directive and Mr. Preminger's challenge to it.)

---

[10] An untimely challenge to a rule may preclude judicial review of any procedural infirmities in creating the rule, even if the rule later is the subject of an agency's denial of a petition to amend or rescind the rule. *See NLRB Union v. FLRA*, 834 F.2d 191, 196 (D.C. Cir. 1987).

### III. THE SECRETARY'S DENIAL OF THE PETITION FOR RULEMAKING

Pursuant to § 502, we review actions of the Secretary "in accordance with chapter 7 of title 5," i.e., under the relevant APA standard of review, 5 U.S.C. § 706. *See DAV*, 234 F.3d at 691. Because we have not previously had occasion to review an agency's denial of a petition for rulemaking under § 553(e), we must determine the relevant review standard. Other courts in APA cases addressing an agency's denial of a petition for rulemaking apply the standard of review found in 5 U.S.C. § 706(2)(A) to determine whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Massachusetts v. EPA*, 549 U.S. at 527-28 (citation omitted); *WWHT*, 656 F.2d at 817.

This is a highly deferential standard, rendered even more deferential by the treatment accorded by the courts to an agency's rulemaking authority. *Massachusetts v. EPA*, 549 U.S. at 527-28 (citation omitted). As one court explained, "an agency's refusal to institute rulemaking proceedings is at the high end of the range" of levels of deference given to agency action under the "arbitrary and capricious" standard. *Am. Horse Prot. Ass'n*, 812 F.2d at 4-5 (citations omitted). Thus, when the proposed rulemaking "pertains to a matter of policy within the agency's expertise and discretion, the scope of review should 'perforce be a narrow one, limited to ensuring that the [agency] has adequately explained the facts and policy concerns it relied on and to satisfy ourselves that those facts have some basis in the record.'" *WWHT*, 656 F.2d at 817 (quoting *Natural Res. Def. Council, Inc. v. SEC*, 606 F.2d 1031, 1053 (D.C. Cir. 1979)). In other words, a court

"look[s] to see whether the agency employed reasoned decisionmaking in rejecting the petition." *Gutierrez*, 532 F.3d at 919 (citations omitted).

Applying this highly deferential standard of review, we conclude that the Secretary adequately explained the facts and policy matters underlying his denial of Mr. Preminger's request for rulemaking. In responding to Mr. Preminger's petition for a rulemaking, the Secretary stated that current regulations, as implemented by internal guidance documents, were effective in ensuring that VA patients receive voting assistance. The Secretary cited 38 C.F.R. § 17.33(a)(4)(iv), which provides that no patient in the VA medical care system may be denied the right to register and vote as provided under state law. He noted that in May 2008 the VA issued internal guidance to VHA facility directors concerning the steps they must take to ensure that VA patients receive voter assistance. He then referenced the current version of that document, VHA Directive 2008-053, issued on September 8, 2008, which outlines the roles and responsibilities of facility directors and VA Voluntary Service Officers in providing voter assistance to VA patients. A copy of the Directive was enclosed with the Secretary's letter.

The Secretary supported his conclusion with data regarding the VA's recent voter assistance efforts. In September 2008, the VA General Counsel testified before the United States Senate that from July 2008 to the date he testified, over 46,000 veterans admitted to VA facilities received voting information. *Voter Registration for Wounded Warriors: Hearing on S. 3308, "The Veterans Voting Support Act", Before the S. Comm. on Rules and Admin.*, 110th Cong. 15-16 (2008) (statement of Paul J. Hutter, General Counsel, United States Dept. of Vet. Affairs). As of October 9, 2008, more than 6,000 posters

had been placed at VA facilities, and more than 165,000 flyers had been provided to new patients. The VA had partnered with non-partisan groups to provide eighty informational voter drives, and more than 700 volunteers had been recruited to assist in voter registration.

Even so, Mr. Preminger argues that the Secretary's denial of his request for rulemaking was arbitrary and capricious because he relied on the existence of Directive 2008-053, which Mr. Preminger alleges is procedurally and substantively invalid. We agree that had the Secretary relied on an invalid directive, particularly one that was unconstitutional, that would undermine the reasonableness of his determination that additional rulemaking was unnecessary. But for the reasons we have explained, we must assume that the Directive is valid, and we conclude that the Secretary adequately explained the facts and policy concerns underlying his denial of Mr. Preminger's request for rulemaking and that his explanation represented reasoned decisionmaking.

We have considered Mr. Preminger's other arguments and, in view of the conclusions set forth in this opinion, find them to be without merit.

## IV. CONCLUSION

For the foregoing reasons, we deny Mr. Preminger's petition for review.

**DENIED**

# United States Court of Appeals
# for the Federal Circuit

_____

**STEVEN PREMINGER,**
*Petitioner,*

v.

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent.*

_____

2009-7044

_____

On petition for review pursuant to 38 U.S.C. Section 502.

_____

PLAGER, *Circuit Judge*, concurring.

The court concludes, I think properly, that a direct challenge by Mr. Preminger to the validity of VHA Directive 2008-053 is barred under our rules as untimely. However, the Secretary placed at issue the validity of the Directive by relying on it when he denied Mr. Preminger's request for rulemaking. It is at least arguable that, in order to ensure full review of the matter over which we hold we do have jurisdiction—the denial of the petition for rulemaking—we might consider the directive's validity, but only as it relates to our review of the Secretary's denial of that petition. In other words, Mr. Preminger might be entitled to challenge the Directive, not as an initial matter regarding its validity, but for the limited

purpose of showing that the Secretary's reliance on it in denying the request for rulemaking was unfounded. In my view, for the reasons I shall explain, even such a challenge would prove futile.

The questions thus posed would be what kind of "rule" is VHA Directive 2008-053? Does 5 U.S.C. § 553 require that it be promulgated pursuant to notice-and-comment procedures? Should it have been published in the Federal Register pursuant to § 552(a)(1)? What are the consequences if either or both of these requirements were not met? Mr. Preminger argues that the requirements of both § 552 and § 553 apply to the Directive, that therefore it is invalid, and that the Secretary's decision on his petition, which decision relied on the Directive, is therefore invalid. It is fair to say that the Government disagrees.

### 1. Notice-and-Comment under Section 553

Mr. Preminger contends that VHA Directive 2008-053 is procedurally defective because it was not issued in accordance with the notice-and-comment rulemaking procedures of § 553. This argument assumes that the Directive is a legislative rule rather than one of the rules or statements that are exempt from notice-and-comment rulemaking, i.e., "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." § 553(b).

Generally, legislative rules requiring notice and comment are those that "effect a change in existing law or policy or which affect individual rights or obligations." *Paralyzed Veterans*, 138 F.3d at 1436. Legislative rules have the "force and effect of law" and have binding effect outside the agency. *Splane*, 216 F.3d at 1064. In contrast, interpretive rules, for example, "clarify or explain

existing law or regulations . . . . '[A]n interpretative statement simply indicates an agency's reading of a statute or a rule. It does not intend to create new rights or duties, but only reminds affected parties of existing duties.'" *Paralyzed Veterans*, 138 F.3d at 1436 (quoting *Orengo Caraballo v. Reich*, 11 F.3d 186, 195 (D.C. Cir. 1993)).

VHA Directive 2008-053, entitled "Voting Assistance for VA Patients," provides guidance to VHA facility directors on how to provide VA patients with information regarding their right to register and vote as set forth in 38 C.F.R. § 17.33(a)(4)(iv). J.A. 5. The Directive states that help from state and local officials, as well as nonpartisan groups, is welcome, but warns that "all assistance must be coordinated with the facility to avoid disruptions and ensure consistency with 38 C.F.R. § 1.218(a)(14)." *Id.* Facility directors are instructed to ensure that there is a written published policy on voter assistance that addresses, among other things, "[c]riteria for evaluating the time, place, and manner of voter registration and voter assistance activities," and "[p]rocedures for coordinating offers of assistance in providing voter registration and voter assistance from state and local governments and nonpartisan organizations and for consulting with Regional Counsel regarding determining the nonpartisan character of groups offering such assistance." *Id.*

This Directive does not effect any change in law or regulation or affect individual rights. To the contrary, it merely provides guidance to VHA facility directors on how to implement existing regulations while protecting existing rights. The Directive certainly does not change the substantive rights of VA patients to register and vote, and indeed its purpose is to assist patients who wish to exercise those rights. Nor does the Directive modify the rights

of those who wish to hold voter registration drives. The VA under the existing regulation, § 1.218(a)(14), can continue to prohibit voter assistance from partisan groups, and voter assistance from nonpartisan groups is welcomed so long as it is coordinated with the facility. Mr. Preminger alleges that the Directive "rescinds the express authorization to conduct voter registration drives contained in" an earlier VHA Directive. Reply Br. 12. While the earlier Directive is not in the record, it is apparent from other statements in the briefs that the earlier Directive also required review of offers for voter registration assistance.

Because the Directive does not effect a change in existing law or policy or affect individual rights or obligations, it is not a "legislative rule" subject to the notice-and-comment rulemaking process.

## 2. Publication in the Federal Register Under Section 552(a)(1)

Mr. Preminger also argues that, even if notice-and-comment procedures were not required for VHA Directive 2008-053, the VA violated the FOIA publication requirement of § 552(a)(1) by failing to publish the Directive in the Federal Register. That section requires publication of various documents, including "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." § 552(a)(1)(D). The statute does not require publication of other documents, including "administrative staff manuals and instructions to staff that affect a member of the public," § 552(a)(2)(C), and "those statements of policy and interpretations which have been adopted by the

agency and are not published in the Federal Register."
§ 552(a)(2)(B).

Although the Government in its brief does not focus
on the question of whether the Directive is subject to the
publication requirement of § 552(a)(1), the Government
essentially concedes that the Directive is an interpretive
rule or a policy statement.  I need not decide whether the
Directive falls within the scope of § 552(a)(1), however,
because Mr. Preminger has not established the prerequi-
site of harm caused by the VA's decision not to publish the
Directive in the Federal Register.

Section 552(a)(1) provides that "[e]xcept to the extent
that a person has actual and timely notice of the terms
thereof, a person may not in any manner be required to
resort to, or be adversely affected by, a matter required to
be published in the Federal Register and not so pub-
lished."  As indicated earlier, Mr. Preminger has not
alleged that he has been "adversely affected by" the
Directive.  Furthermore, Mr. Preminger received actual
notice of the Directive and its contents when he received
the Secretary's letter denying his request for rulemak-
ing.[1]

Accordingly, any failure of the VA to publish the Di-
rective in the Federal Register was harmless to Mr.
Preminger and is not grounds for invalidating the Direc-
tive.  *See Splane*, 216 F.3d at 1065; *Caribbean Produce
Exch., Inc. v. Sec'y of Health & Human Servs.*, 893 F.2d 3,
7 (1st Cir. 1989) ("[T]he failure to publish in the Federal

---

[1]    All VHA Directives currently in effect, including
Directive 2008-053, are available to the public on the VA
website,
http://www1.va.gov/vhapublications/publications.cfm?pub
=1.

Register does not automatically invalidate an administrative regulation or guideline." (quotations and citations omitted)); *New York v. Lyng*, 829 F.2d 346, 354 (2d Cir. 1987) ("[T]he requirement for publication attaches only to matters which if not published would adversely affect a member of the public." (quotations and citations omitted)).

### 3. The First Amendment Challenge

VHA Directive 2008-053 gives guidance on how to provide veterans at VHA facilities with voter assistance in a way that is consistent with the governing regulation, 38 C.F.R. § 1.218(a)(14). We held in *Preminger I* that 38 C.F.R. § 1.218(a)(14) does not on its face violate the First Amendment. *Preminger I*, 517 F.3d at 1316-17. Mr. Preminger now challenges the Directive on essentially the same First Amendment grounds. But the scope and operational effect of the Directive is necessarily tied to the governing regulation that it purports to explain and implement, so that most of his arguments parallel those that were made and rejected in the earlier case. There is no need to revisit the previously decided matters.

A response to Mr. Preminger's purportedly new Constitutional arguments directed to the Directive can be made rather summarily. He alleges that VHA Directive 2008-053 applies to all VA property, not just medical facilities, thus suggesting that the Directive applies in public fora. This is relevant because the test for whether speech restrictions on Government property are permissible depends on whether the property is a public forum, a designated public forum, or a nonpublic forum. *Preminger I*, 517 F.3d at 1311. In *Preminger I*, we concluded that VA medical centers were nonpublic fora, and

therefore VA restrictions on speech were permissible so long as they were reasonable and viewpoint neutral. *Id.*

There is no support for Mr. Preminger's allegation that the Directive applies to many types of VA property, including libraries, universities, public housing, and recreational facilities. The Directive, entitled "Voting Assistance for VA Patients," was issued to directors at VA hospitals and addresses voting assistance for VA patients in VHA facilities. In its opening sections entitled Purpose and Background, the Directive notes that "The right to register and vote is one of the explicit rights set forth in the VA patients' rights regulation in Title 38 Code of Federal Regulations (CFR) § 17.33." The document then notes that "information about these rights, including the right to vote, is posted at each nursing station." One need not ask how many nursing stations one typically finds in VA libraries or recreational facilities in order to conclude that on its face the Directive applies only to VHA medical facilities.

Mr. Preminger also argues that the Directive is unconstitutional because it "restores" the broad discretion of VA officials that we "interpreted out of" § 1.218(a)(14) to avoid finding the regulation unconstitutional. Reply Br. 5. One problem with this argument is that we did not interpret anything "out" of the regulation. In response to Mr. Preminger's petition in the earlier case for panel rehearing, we simply explained in more detail our original holding that the regulation contained adequate, specific standards to guide the VA's exercise of discretion to authorize or refuse to authorize a particular demonstration. *Preminger I*, 517 F.3d at 1315-16.

Furthermore, the Directive does not give local VHA officials unfettered discretion to authorize or restrict

speech at will. In *Preminger I*, we held that VA officials must have the discretion to decide whether authorizing a particular activity would disrupt services offered in the facility and impede the ability of the facility to achieve its mission of providing health care for veterans. *Id.* As set forth in the Directive, VHA facility directors are to be guided by the standards in § 1.218(a)(14) in establishing procedures for voter assistance at each facility. The Directive does not, and cannot, impermissibly broaden officials' discretion by somehow eliminating these standards.

For all of the above reasons, I conclude that Mr. Preminger's challenge to the Secretary's denial of the requested rulemaking is properly denied by us, whether on the narrow basis the court announces in its *per curiam* opinion, or as a result of the more detailed discussion of his arguments presented here.