WALLACH, Circuit Judge,
dissenting.
Irrespective of whether our military veterans served in combat, they “risked both life and liberty in their military service to this country.” Sneed v. Shinseki, 737 F.3d 719, 728 (Fed.Cir.2013). That is equally true when our servicepersons become victims at the hands of their compatriots, especially in cases of sexual assault, which often results in post-traumatic stress disorder (“PTSD”).
Petitioners in this appeal sought to compel the Secretary of Veterans Affairs (“Secretary”) to promulgate rules addressing their plight. Their Petition for Rule-making was denied. The majority denies the petition for review of the Secretary’s denial because, in the majority’s view, “the Secretary adequately explained its reasons for denying the [Petition for Rulemaking].” Maj. Op. at 1376. However, the majority does not appreciate that the Secretary failed to offer a reasoned explanation for treating PTSD claimants differently depending on the context in which the claimed stressor arose. Because the majority fails to discern that a critical aspect of the Secretary’s denial is devoid of reasoned decisionmaking, and is therefore “arbitrary” within the meaning of the Administrative Procedure Act,[1] I respectfully dissent.
I.
I first must explain why I disagree with the majority’s conclusions. It is true the *1379 Secretary appears to offer reasonable responses to a number of issues raised by the Petition for Rulemaking. See J.A. 4-7 (Letter from Tammy L. Kennedy, Acting General Counsel, Department of Veterans Affairs (“VA”), to Abigail Graber, The Jerome N. Frank Legal Services Organization, July 14, 2014). First, the letter acknowledges “the difficulty of producing evidence to prove occurrence of an in-service personal assault” such as military sexual trauma (“MST”), and explains that 38 C.F.R. § 3.304(f)(5) (2014) addresses this difficulty by providing that a broad variety of evidence may be used to “ ‘corroborate the veteran’s account of the stressor incident.’ ” J.A. 4 (quoting 38 C.F.R. § 3.304(f)(5)). The Secretary also emphasizes in its letter that the list of potential sources of evidence in § 3.304(f)(5) is “not exclusive.” J.A. 5.
Second, the Secretary’s denial letter addresses Petitioners’ concern that “ ‘VA adjudicators often misapply the current evi-dentiary standard,’ ” and explains several measures the VA has taken to reduce such errors, including the development of “additional guidance and training.” J.A. 5 (quoting J.A. 330). The letter notes that the ‘VA’s grant rate for PTSD claims based on MST rose from a rate of 38 percent prior to this training initiative to a rate of 52 percent at the end of February 2013, which was roughly comparable to the 59-percent grant rate at that time for all PTSD claims.” J.A. 6 (citation omitted). Third, and relatedly, the letter explains that the VA contacted Veterans whose claims were denied between September 2010 and April 2013, notifying them that claims could be resubmitted for review. J.A. 6.
Although the Secretary’s letter responds to some of the issues raised by Petitioners, it does not “explain! ] the facts and policy” matters underlying Petitioners’ chief concern, namely, the maintenance of different evidentiary standards for PTSD claims resulting from MST, and PTSD claims resulting from other stres-sors. Preminger v. Sec’y of Veterans Affairs, 632 F.3d 1345, 1353 (Fed.Cir.2011) (internal quotation marks and citation omitted). The Secretary’s discussion of the flexible nature of the evidentiary requirements of § 3.304(f)(5) is not responsive to this critical issue because it addresses the subsection in isolation, and does not explain what facts or policy concerns might justify the subsection’s more stringent corroboration requirement as compared to its neighboring subsections. See Motor Vehicle Mfrs. Ass’n v. State Farm Mid. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (Agency action is arbitrary and capricious when “the agency has ... entirely failed to consider an important aspect of the problem.”). The letter therefore fails to reflect “reasoned decisionmaking” sufficient to explain the Secretary’s denial of the Petition for Rulemaking. Preminger, 632 F.3d at 1354 (internal quotation marks and citation omitted).
Similarly, while it is commendable that the VA has initiated training and outreach efforts to ensure that MST-based PTSD claims are processed in a “fair, consistent, and thoughtful manner,” J.A. 5, these efforts are unrelated to the underlying issue of whether a justification exists for the different evidentiary requirements in 38 C.F.R. § 3.304(f)(5),[2] and consequently for the Secretary’s decision to deny the Peti *1380 tion for Rulemaking, see Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade, 412 U.S. 800, 808, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973) (An agency has a “duty to explain its departure from prior norms.” (citation omitted)); id. (The grounds for an agency’s departure “must be clearly set forth so that the reviewing court may understand the basis of the agency’s action and so may judge the consistency of that action with the agency’s mandate.”). Training efforts may address the discriminatory effects produced by the different evidentiary standards, but they do not provide a rationale for the differing standards themselves. For the Secretary’s denial to be upheld, it must either offer some rationale that could explain the maintenance of different standards for similarly situated claimants, or it must explain why such claimants are in fact not similarly situated. See Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd., 403 F.3d 771, 777 (D.C.Cir.2005) (“Where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld.” (citation omitted)).
II.
An examination of the regulation’s text, along with well-accepted principles of administrative law, reveals that we cannot sustain the Secretary’s denial of the Petition for Rulemaking. Section 3.304(f) of Title 38 of the Code of Federal Regulations sets forth three requirements for es-tabhshing service-connection for PTSD: “[1] medical evidence diagnosing [PTSD] ...; [2] a link,-established by medical evidence, between current symptoms and an in-service stressor; and [3] credible supporting evidence that the claimed in-service stressor occurred.” 38 C.F.R. § 3.304(f) (2014) (emphasis added). These requirements apply regardless of the cause of the PTSD.
However, in subsections (1) through (4) of § 3.304(f), “the veteran’s lay testimony alone” can constitute “credible supporting evidence.”. See 38 C.F.R. § 3.304(f)(1) (diagnosis of PTSD during service); id. § 3.304(f)(2) (combat-related PTSD); id. § 3.304(f)(3) (PTSD related to “fear of hostile military or terrorist activity”); id. § 3.304(f)(4) (PTSD related to prisoner-of-war status). By contrast, where PTSD is caused by MST, the veteran’s lay testimony alone does not constitute “credible supporting evidence,” and corroboration of that testimony is required. See id. § 3.304(f)(5) (listing numerous non-exclusive examples of the types of evidence that “may corroborate the veteran’s account of the [MST-related] stressor incident”).[3] The Secretary in its denial letter offers no explanation of the different requirements.
Instead, the Secretary explains what a veteran must establish under § 3.304(f)(2)-(3). The denial letter notes that veterans *1381 claiming combat-related PTSD must first “establish [under § 3.304(f)(2) ] that he or she ‘engaged in combat with the enemy,’ i.e. ‘personally participated in events constituting an actual fight or encounter with a military foe or hostile unit or instrumentality.’ ” J.A. 6 (quoting Moran v. Peake, 525 F.3d 1157, 1159 (Fed.Cir.2008)). The letter explains that “ § 3.304(f)(3) ... eliminates the [corroboration] requirement ... if a stressor claimed ... is related to ... fear of hostile military or terrorist activity.” J.A. 6. In its brief, the Secretary adds that “a veteran seeking PTSD benefits as a result of a prisoner of war experience must still establish that he or she was a prisoner-of-war.” Resp’t’s Br. 29 (internal quotation marks and citations omitted).
These explanations by the Secretary do not address the differential evidentiary requirements imposed by regulation. As noted, § 3.304(f) requires all claimants who seek to establish service-connection for PTSD to provide “credible supporting evidence that the claimed in-service stres-sor occurred.” 38 C.F.R. § 3.304(f).[4] Of course, the lay testimony of claimants asserting combat-related, fear-related, or prisoner-of-war related PTSD would not be credible if the claimants were in fact not prisoners of war, or were not involved in combat or situations where the Veteran was confronted with the threat of enemy activity. Similarly, the lay testimony of claimants asserting MST-related PTSD would not be credible if the claimant did not in fact serve in the military. Subsection (f)(5), however, imposes a corroboration requirement even if the evidence establishes the claimant served in the military and the claimed in-service stressor is related to that service.
Once it is established that a PTSD claimant was in fact a prisoner of war, or was involved in combat or threatened by enemy activity, that claimant is similarly situated' to the claimant seeking service connection for MST-related PTSD who has established service in the military: both were serving in a context where exposure to a specific stressor could — but would not' necessarily — occur, see J.A. 7, 43, and both must provide “credible supporting evidence that the claimed in-service stressor occurred.” 38 C.F.R. § 3.304(f). The difference arises at this point, when the lay testimony of the claimant for MST-related . PTSD will alone be insufficient to establish the occurrence of a specific stressor, whereas the same testimony alone will be sufficient in the case of other claimants. The Secretary has offered no rationale for this distinction.
It may be that the Secretary can offer “facts and policy concerns” that support differential treatment, Preminger, 632 F.3d at 1353, but the failure to do so in its *1382 denial letter provides no basis for this court to conclude that the decision was not arbitrary, Williams Gas Processing-Gulf Coast Co., L.P. v. Fed. Energy Regulatory Comm’n, 475 F.3d 319, 326 (D.C.Cir.2006) (“Arbitrary and capricious review ‘demands evidence of reasoned decisionmak-ing at the agency level....’” (quoting Kan. City v. HUD, 923 F.2d 188, 192 (D.C.Cir.1991))). It is not the job of this court to fill in the gaps in the agency’s analysis. The agency must explain why a different standard is justified. See Point Park Univ. v. NLRB, 457 F.3d 42, 50 (D.C.Cir.2006) (“Nor can our Court fill in critical gaps in [an agency’s] reasoning. We can only look to the [agency’s] stated rationale. We cannot sustain its action on some other basis the [agency] did not mention.” (citation omitted)); see also Timken U.S. Corp. v. United States, 421 F.3d 1350, 1355 (Fed.Cir.2005) (“[I]t is well settled that an- agency must explain its action with sufficient clarity to permit ‘effective judicial review.’ ” (quoting Camp v. Pitts, 411 U.S. 138, 142-43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973))); Mortg. Inv’rs Corp. of Ohio v. Gober, 220 F.3d 1375, 1378 (Fed.Cir.2000).
III.
“There was a time not long ago when courts and legal scholars viewed allegations of rape [and other forms of sexual assault] with automatic suspicion, and judges instructed juries accordingly.” Osburn v. Hagel, 46 F.Supp.3d 1235, 1244 n. 3 (M.D.Ala.2014) (citation omitted). Thankfully, those days are supposed to be behind us, but the Secretary’s denial letter provides a reminder of the need to be ever vigilant lest such irrational bias encroach once again into the legal and regulatory sphere. Unfortunately, we are unable to know whether that is the case with respect to 38 C.F.R. § 3.304(f)(5), because no explanation whatsoever has been provided. Because the Secretary’s denial of the Petition for Rulemaking does not describe any facts or policy concerns that might justify the disparate evidentiary requirements applied to similarly situated veterans claiming service connection for PTSD, it does not evince reasoned decisionmaking. I therefore respectfully dissent.

. In 2002, the VA added subsection (f)(3) to § 3.304, which is now codified in subsection (f)(5). Post-Traumatic Stress Disorder Claims Based on Personal Assault, 67 Fed.Reg. 10,- *1380 330 (Mar. 7, 2002). At the time the VA promulgated this subsection, the VA’s regulations contained evidentiary standards for non-MST stressors. See 38 C.F.R. § 3.304(f) (2001).

. Despite the VA's use of the permissive term "may,” the agency interprets this regulation to require corroborating evidence in addition to the veteran’s testimony. See J.A. 4 ("Your proposal would eliminate the requirement for corroborating evidence.”), 49 (discussing the "requirement for seeking markers” from among the § 3.304(f)(5) evidentiary categories); Respondent’s Br. 2 (noting the "corroborating evidence requirement for MST claims”), 6 (“[A] veteran’s lay testimony alone, without any corroboration, is not sufficient [under § 3.304(f)(5) ].”).

. Subsections (2) through (4) of 38 C.F.R. § 3.304(f) eliminate the need not for credible supporting evidence, but for corroborating evidence, see, e.g., J.A. 4, 6, 210, that is, evidence in addition to the veteran’s own testimony. See Evidence: corroborating evidence, Black's Law Dictionary (10th ed.2014) ("Evidence that differs from but strengthens or confirms ... other evidence....”). They also instruct that the veteran’s lay testimony alone can constitute the required "credible supporting evidence,” but only in the circumstances described in those subsections. See, e.g., No. 09-48 429, 2011 WL 1802066, at *3 (Bd.Vet. App. Mar. 15, 2011) ("Provided ... the Veteran engaged in 'combat with the enemy,’ his lay testimony alone constitutes credible supporting evidence....” (citation omitted)); No. 02-18 881, 2005 WL 3921319, at *2 (Bd. Vet.App. Nov. 17, 2005) ("[A] noncombat veteran's testimony alone does not qualify as 'credible supporting evidence’.... ” (emphasis added)).