# United States Court of Appeals for the Federal Circuit

---

**SERVICE WOMEN'S ACTION NETWORK,
VIETNAM VETERANS OF AMERICA,**
*Petitioners*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

---

2014-7115

---

Petition for review pursuant to 38 U.S.C. Section 502.

---

Decided: March 3, 2016

---

DANIELA NOGUEIRA, RACHEL TUCHMAN, Jerome N. Frank Legal Services Organization, New Haven, CT, argued for petitioners. Also represented by MICHAEL JOEL WISHNIE; MARGARET MOOG MIDDLETON, Connecticut Veterans Legal Center, West Haven, CT.

ALLISON KIDD-MILLER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR; DAVID J. BARRANS, MARTIE ADELMAN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

JOHN MILLIAN, Gibson, Dunn & Crutcher LLP, Washington, DC, for amici curiae Public Health and Mental Health Specialists, Madelon Baranoski, Traci Cipriano, Shelley Geballe, Gregg Gonsalves, Catherine Lewis, Alice Miller, Howard Zonana.

SANDRA SHIN-YOUNG PARK, American Civil Liberties Union Foundation, Inc., New York, NY, for amici curiae American Civil Liberties Union, Futures Without Violence, National Alliance to End Sexual Violence, National Center on Domestic and Sexual Violence, Protect Our Defenders. Also represented by LENORA M. LAPIDUS.

PAUL WHITFIELD HUGHES, Mayer Brown LLP, Washington, DC, for amicus curiae Members of Congress. Also represented by CHARLES ALAN ROTHFELD.

MARIANNE HOGAN, Morgan, Lewis & Bockius LLP, Washington, DC, for amicus curiae National Veterans Legal Services Program. Also represented by BARTON F. STICHMAN, National Veterans Legal Services Program, Washington, DC.

---

Before LOURIE, WALLACH, and HUGHES, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* HUGHES.

Dissenting opinion filed by *Circuit Judge* WALLACH.

HUGHES, *Circuit Judge.*

There has been a growing recognition of the pervasive and continuing problem of sexual abuse in the military and the often severe effects it can have.[1] Numerous steps

---

[1]    *See, e.g.*, J.A. 217–64, Military Sexual Trauma, GAO-14-477 (June 9, 2014).

have been taken to confront the problem, including an increased focus by the Department of Defense, and increased efforts by the Department of Veterans Affairs to improve its adjudication of disability claims related to military sexual trauma.[2]

In response to what they viewed as the VA's inadequate response to MST-based disability claims, petitioners here (the Service Women's Action Network and the Vietnam Veterans of America) submitted a petition for rulemaking which requested that the VA promulgate a new regulation regarding the adjudication of certain MST-based disability claims. The Secretary of Veterans Affairs denied the rulemaking petition and this appeal followed. Our review in these circumstances is limited. Because the Secretary's decision to deny the rulemaking petition was not arbitrary or capricious, or in violation of the equal protection component of the due process clause of the Fifth Amendment, we deny the petition for review.

I

In 2012, one in five female veterans and one in one-hundred male veterans reported that they experienced

---

[2] *See* Department of Defense Annual Report on Sexual Assault in the Military, at 11–12 (2014) ("From FY 2012 to FY 2014, the Secretary of Defense directed 41 initiatives that fundamentally reformed how the military prevents, responds to, and adjudicates sexual assault."); Victims Protection Act of 2014, S. 1917, 113th Cong. (2014); Military Justice Improvement Act of 2013, S. 1752, 113th Cong. (2013); J.A. 217–64, Military Sexual Trauma, GAO-14-477 ("The Veterans Benefits Administration (VBA), within the Department of Veterans Affairs (VA), has taken several steps to improve decision-making on disability claims involving military sexual trauma (MST) and to rectify past errors.").

sexual abuse in the military, and an estimated 26,000 servicemembers "experienced some form of unwanted sexual contact." J.A. 220. The trauma stemming from sexual abuse in the military is referred to as military sexual trauma (MST) and it can result in severe chronic medical conditions, including Post-Traumatic Stress Disorder (PTSD), depression, and anxiety.[3]

Generally, veterans with service-connected disabilities (i.e., injuries or diseases contracted or aggravated in military service) are entitled to disability benefits. *See* 38 U.S.C. §§ 1110, 1131. Veterans are eligible to receive disability benefits for the physical and mental health disabilities caused or aggravated by MST, such as PTSD, depression, or anxiety.

From 2008–2013, veterans filed over 29,000 claims related to disabilities caused by MST. J.A. 220. And from 2010–2013, the overwhelming majority of those MST-based claims (94%) were for PTSD. *Id.* In at least 2010 and 2011, there was a significant disparity in the rates at which PTSD claims were granted, depending on whether the claim was based on MST or some other stressor. For instance, in 2010, 56% of non-MST-based PTSD claims were granted, while only 32.3% of MST-based PTSD claims were granted. J.A. 173. And, in 2011, 74% of non-MST-based PTSD claims were granted, while only 44.6% of MST-based PTSD claims were granted. *Id.*

---

[3] The VA defines MST as "psychological trauma, which in the judgment of a mental health professional employed by the Department, resulted from a physical assault of a sexual nature, battery of a sexual nature, or sexual harassment which occurred while the veteran was serving on active duty, active duty for training, or inactive duty training." 38 U.S.C. § 1720D(a)(1).

To address this significant disparity, the Service Women's Action Network and the Vietnam Veterans of America (collectively, petitioners) petitioned the Secretary for a rulemaking. Petitioners claim that this disparity, at least in part, is due to the higher evidentiary burden required to establish service-connection for MST-based PTSD.

To establish service connection for PTSD, there must be a medical diagnosis of PTSD, a link between the PTSD diagnosis and the in-service stressor, and "credible supporting evidence that the claimed in-service stressor occurred." 38 C.F.R. § 3.304(f). The Secretary has the "authority to prescribe all rules and regulations which are necessary or appropriate . . . with respect to the nature and extent of proof and evidence . . . in order to establish the right to benefits." 38 U.S.C. § 501(a). Under this authority, the Secretary allows a veteran's lay testimony alone to constitute the credible supporting evidence required for stressors related to combat in which the veteran engaged, a veteran's fear of hostile military or terrorist activity, or a veteran's experience being a prisoner of war. 38 C.F.R. § 3.304(f)(2)–(4). Specifically, if the evidence establishes that the veteran experienced a specific event that caused the claimed stressor (e.g., that the veteran engaged in combat with the enemy), and the claimed stressor is consistent with the circumstances, conditions, or hardships of the veteran's service, the VA allows the veteran to establish the occurrence of the claimed stressor through the veteran's "lay testimony alone" when there is no clear and convincing evidence to the contrary. *Id.* In contrast, when the stressor is related to an in-service personal assault, which includes MST, the veteran is required to provide corroborating evidence to substantiate the occurrence of the stressor. 38 C.F.R. § 3.304(f)(5). However, evidence from sources other than the veteran's service records may constitute credible evidence supporting the occurrence of the stress-

or, including, but not limited to: "records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy." *Id.* Moreover, "VA will not deny a post-traumatic stress disorder claim that is based on in-service personal assault without first advising the claimant that evidence from sources other than the veteran's service records or evidence of behavior changes may constitute credible supporting evidence of the stressor and allowing him or her the opportunity to furnish this type of evidence or advise VA of potential sources of such evidence." *Id.*

The petition requests that the VA promulgate a new subsection of 38 CFR § 3.304—§ 3.304(g)—to establish a separate evidentiary presumption for PTSD caused by MST. Petitioners' proposed rule reads:

> If a stressor claimed by a veteran is related to the veteran's reported experience of military sexual trauma and a psychiatrist or psychologist confirms that the claimed stressor is adequate to support a diagnosis of a mental health condition and that the veteran's symptoms are related to the claimed stressor, in the absence of clear and convincing evidence to the contrary, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor.

J.A. 302.

The petition contends that this rule is necessary because: (1) systemic underreporting deprives survivors of rape, sexual assault, and sexual harassment of the documentation necessary to corroborate their claims; (2) VA adjudicators often misapply the current evidentiary standard; and (3) VA's current rules for PTSD related to MST allow for biased exercises of adjudicators' discretion.

The petition further argues that veterans suffering from PTSD caused by other stressors "do not have to present any threshold evidence of the specific stressor," but must simply show that they "served in general conditions in which stressors causing PTSD occur." J.A. 345. Therefore, the proposed evidentiary standard only requires veterans "to prove they served in general conditions in which military sexual assault and sexual harassment are known to occur." *Id*. at 345. However, since sexual harassment and sexual assault are "known to occur in all conditions of service," veterans claiming benefits for MST-based PTSD would only need to prove that they served in the military. *Id*.

The Secretary denied the petition. Petitioners appeal on the grounds that the denial is arbitrary and capricious and violates the equal protection clause of the Fifth Amendment. We have jurisdiction under 38 U.S.C § 502. *Preminger v. Sec'y of Veterans Affairs*, 632 F.3d 1345, 1352 (Fed. Cir. 2011).

## II

As we have previously held, we review the Secretary's denial of a petition for rulemaking pursuant to 5 U.S.C. § 706(2)(A) to determine whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. at 1353 (citing *Massachusetts v. EPA*, 549 U.S. 497, 527–28 (2007)). When a proposed rulemaking "pertains to a matter of policy within the agency's expertise and discretion, the scope of review should perforce be a narrow one, limited to ensuring that the agency has adequately explained the facts and policy concerns it relied on and to satisfy ourselves that those facts have some basis in the record." *Id*. at 1353–54 (quoting *WWHT, Inc. v. FCC*, 656 F.2d 807, 817 (D.C. Cir. 1981)) (internal quotation marks omitted). "In other words, a court 'looks to see whether the agency employed reasoned decisionmaking in rejecting the peti-

tion.'" *Id.* at 1354 (quoting *Defs. of Wildlife v. Gutierrez,* 532 F.3d 913, 919 (D.C. Cir. 2008) (alteration in original omitted)).

To determine if the agency employed reasoned decisionmaking, "we must examine the petition for rulemaking, comments pro and con . . . and the agency's explanation of its decision to reject the petition." *Gutierrez,* 532 F.3d at 920 (quoting *Am. Horse Prot. Ass'n v. Lyng,* 812 F.2d 1, 5 (D.C. Cir. 1987)) (internal quotation marks omitted). In only the "rarest and most compelling of circumstances" is it appropriate to overturn an agency judgment not to institute a rulemaking. *WWHT, Inc.,* 656 F.2d at 818; *see also Nat'l Customs Brokers & Forwarders Ass'n of Am. Inc. v. United States,* 883 F.2d 93, 96–97 (D.C. Cir. 1989) ("We will overturn an agency's decision not to initiate a rulemaking only for compelling cause, such as plain error of law or a fundamental change in the factual premises previously considered by the agency.").

Applying this extremely limited and highly deferential standard of review, we conclude that the Secretary has adequately explained the facts and policy matters underlying the decision to deny the petition, and therefore employed reasoned decisionmaking.[4]

---

[4] The Secretary's denial also concluded that "sexual assault is not indisputably associated with particular places, types, and circumstances of service," and, therefore, petitioners' requested regulation is inconsistent with its statutory authority. J.A. 7. Petitioners disagree with this conclusion, arguing that MST is, in fact, a "circumstance" of service. We decline to decide whether MST is a circumstance of service because the issue presented is not whether the Secretary *could have* promulgated the requested rule, but whether the Secretary adequately explained its reasoning for not doing so. *See, e.g., McKin-*

First, the Secretary explained that the current regulation specifically addresses petitioners' stated concern regarding "the difficulty of producing evidence to prove [the] occurrence of an in-service personal assault." J.A. 4–5; *see also Preminger*, 632 F.3d at 1348, 1354 (finding that the Secretary engaged in reasoned decisionmaking when denying a petition for rulemaking, where the Secretary determined that the current regulation effectively addressed the petitioner's stated reasons for requesting the rulemaking). The Secretary acknowledged the "sensitive nature of MST stressors and the reluctance on the part of Servicemembers to report such events during military service" and concluded that the current regulation accommodates those concerns because it relaxes the general rule requiring veterans to solely rely on evidence contained in their service record by allowing veterans to provide corroborating evidence from a variety of sources. J.A. at 4; *see also* Post-Traumatic Stress Disorder Claims Based on Personal Assault, 65 Fed. Reg. 61,132 (Oct. 16, 2000) (proposed rule) ("Many incidents of in-service personal assault are not officially reported, and veterans may find it difficult to produce evidence to prove the occurrence of this type of stressor. This proposed amendment addresses this difficulty by specifying that evidence from sources other than the veteran's service records may constitute credible supporting evidence of the in-service stressor, where the alleged stressor is a personal assault.").

Second, the denial details the VA's training programs regarding MST-based claims. These programs ensure

---

*ney v. McDonald*, 796 F.3d 1377, 1384–85 (Fed. Cir. 2015) ("[T]he issue before us is not whether the VA *could* have assigned a retroactive effective date to the 2011 regulation, but rather, whether the VA acted arbitrarily and capriciously in assigning a prospective date.").

that "Department employees develop and adjudicate MST claims consistent with VA's regulation and with sensitivity to the unique circumstances presented by each individual claim."  J.A. 5.  And, as a result of these programs, grant rates for MST-based PTSD claims increased significantly.  *Id.* at 6.  Specifically, in 2011, the Veterans Benefits Administration (VBA) directed regional offices to designate adjudicators with experience in processing complex claims to assist in development of MST claims and adjudications.  The VBA developed guidance and training for these adjudicators, including: VBA Training Letter 11-05 (Dec. 2, 2011); a 1.5 hour webinar on MST claims adjudication; a 4 hour in-person training on MST; and a 1.5 hour information session regarding how to conduct medical examinations of veterans claiming disability as a result of MST.  As a result, the grant rates for MST-based PTSD claims rose from 38% in 2011 to 52% in March 2013.  Moreover, in 2013, the overall grant rate for MST-based PTSD claims was 49%—comparable to the 55% grant rate for all PTSD claims.

These statistics adequately support the Secretary's ultimate conclusion that the current regulation and training program provide "for the accurate, fair, and sensitive adjudication of claims based on MST."  J.A. 7; *see also* J.A. 235, Military Sexual Trauma, GAO-14-477 (June 9, 2014) (some variation in grant rates is expected due to "actual differences among claims and their levels of evidence").

Lastly, the denial clarifies that the evidentiary burden for PTSD caused by other stressors does in fact require a veteran to present threshold evidence of the specific stressor, contrary to petitioners' belief.  The Secretary explained that, for example, under 38 C.F.R. § 3.304(f)(2), a veteran has the initial burden of establishing that he or she "engaged in combat with the enemy, *i.e.*, personally participated in events constituting an actual fight or encounter with a military foe or hostile unit or instrumentality before the Veteran's testimony,

alone," is sufficient to establish the service-connection. J.A. 6 (citing *Moran v. Peake*, 525 F.3d 1157, 1159 (Fed. Cir. 2008); *Stone v. Nicholson*, 480 F.3d 1111, 1113 (Fed. Cir. 2007)) (internal quotation marks omitted).

Although others may have determined that petitioners' requested rule is the best way to ensure the accurate, fair, and sensitive adjudication of MST-based PTSD claims, that is not the question before us. Ultimately, we are bound by the very limited and highly deferential standard of review, which only allows us to determine if the Secretary's denial constitutes reasoned decisionmaking. Because the Secretary adequately explained its reasons for denying the petition and continuing with the status quo, we conclude that the denial was not arbitrary or capricious.

## III

Lastly, petitioners claim that by denying the petition, the Secretary violated the equal protection component of the due process clause of the Fifth Amendment because: (1) it intentionally discriminates against women without providing an exceedingly persuasive justification; and (2) in the alternative, it discriminates against survivors of MST-based PTSD without providing a legitimate reason.

The government violates equal protection when it intentionally discriminates against an individual based on race, national origin, or gender. *See Berkley v. United States*, 287 F.3d 1076, 1084 (Fed. Cir. 2002). A facially neutral law or regulation can violate equal protection "if it was motivated by discriminatory animus and its application results in discriminatory effect." *Id*. If petitioners establish that the government engaged in intentional discrimination, then the government "must demonstrate an exceedingly persuasive justification" for the discrimination. *United States v. Virginia*, 518 U.S. 515, 531 (1996).

Petitioners assert that women experience MST at a greater rate than men, and therefore the denial intentionally discriminates against women because it subjects women to a higher evidentiary burden than men when claiming disability benefits. *See* Pet. Br. at 40. When the government's particular course of action disproportionately impacts one gender, an equal protection violation arises "only if that impact can be traced to a discriminatory purpose." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979). A discriminatory purpose implies that the decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id*. at 279.

The record here establishes that both men and women suffer from MST-based PTSD, and therefore, both men and women are subject to a higher evidentiary burden to claim disability benefits for MST-based PTSD. *See, e.g.*, Pet. Br. at 11 ("disparity" in grant rates for men suffering from MST-based PTSD "was especially high"); *id*. at 30 ("disparity between the approval rate for MST-related PTSD claims and the overall approval rate for all PTSD claims nationwide . . . results in disparate impact on both men and women."). "When there is a rational, neutral explanation for the adverse impact *and the law or custom disadvantages both men and women*, then an inference of discriminatory purpose is not permitted." *Ricketts v. City of Columbia*, 36 F.3d 775, 781 (8th Cir. 1994) (emphasis added) (citing *Feeney*, 442 U.S. at 275).

The Secretary treats MST-based PTSD claims differently from other PTSD claims because MST can occur at any place, at any time, and to anyone and, therefore, raises challenges not applicable to other PTSD claims. *See* Resp. Br. at 42. The VA has determined that veterans suffering from PTSD involving stressors that occurred under specific circumstances (e.g., while engaged in combat or being held as a prisoner of war), are relieved of

the requirement to provide corroborating evidence that the particular stressor occurred, and instead may establish the occurrence of the particular stressor through their lay testimony alone. However, to be relieved of this evidentiary requirement, the veteran is required to first present "threshold" evidence establishing that, for example, he or she engaged in combat with the enemy or is a former prisoner of war. *See id.* at 28; J.A. 45. By requiring the veteran to present this threshold evidence, the VA is able to consider if the claimed stressor is consistent with the "places, types, and circumstances" of engaging in combat with the enemy or being held as a prisoner of war.

MST, however, is not limited to a specific experience or circumstance, and can unfortunately occur at any place, at any time, and to anyone. Consequently, there is no "specific" context or circumstance in which the in-service stressor occurred. Because MST-based claimants generally cannot prove that the stressor (MST) occurred under a specific circumstance, the VA does not have an opportunity to consider if the MST is consistent with the places, types, and circumstances of a claimant's military service. Thus, the VA requires veterans seeking benefits for MST-based PTSD to provide corroborating evidence establishing the occurrence of the MST so that it may properly consider whether the MST is consistent with the "places, types, and circumstances" of service. *See* Resp. Br. at 30.

This requirement is rational and gender-neutral; therefore, the Secretary did not act with discriminatory purpose when denying the petition. Because the denial was not motivated by a discriminatory purpose, the VA did not engage in intentional gender discrimination.

Alternatively, petitioners claim that by denying the petition, the Secretary discriminates between survivors of MST-based PTSD and survivors of PTSD caused by other stressors. If discrimination is based on a classification

other than race, national origin, or gender, the classification "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (internal quotations and citation omitted). For the reasons discussed above, we find the distinction between MST-based PTSD and non-MST-based PTSD rational.

                              IV

The court is sympathetic to the many challenges faced by victims of MST. However, our review of the Secretary's decision is extremely limited and highly deferential. For the reasons set forth above, the petition for review is denied.

                    **PETITION DENIED**

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

**SERVICE WOMEN'S ACTION NETWORK,
VIETNAM VETERANS OF AMERICA,**
*Petitioners*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

---

2014-7115

---

Petition for review pursuant to 38 U.S.C. § 502.

---

WALLACH, *Circuit Judge*, dissenting.

Irrespective of whether our military veterans served in combat, they "risked both life and liberty in their military service to this country." *Sneed v. Shinseki*, 737 F.3d 719, 728 (Fed. Cir. 2013). That is equally true when our servicepersons become victims at the hands of their compatriots, especially in cases of sexual assault, which often results in post-traumatic stress disorder ("PTSD").

Petitioners in this appeal sought to compel the Secretary of Veterans Affairs ("Secretary") to promulgate rules addressing their plight. Their Petition for Rulemaking was denied. The majority denies the petition for review of the Secretary's denial because, in the majority's view, "the Secretary adequately explained its reasons for denying

the [Petition for Rulemaking]." Maj. Op. at 11. However, the majority does not appreciate that the Secretary failed to offer a reasoned explanation for treating PTSD claimants differently depending on the context in which the claimed stressor arose. Because the majority fails to discern that a critical aspect of the Secretary's denial is devoid of reasoned decisionmaking, and is therefore "arbitrary" within the meaning of the Administrative Procedure Act,[1] I respectfully dissent.

## I.

I first must explain why I disagree with the majority's conclusions. It is true the Secretary appears to offer reasonable responses to a number of issues raised by the Petition for Rulemaking. *See* J.A. 4–7 (Letter from Tammy L. Kennedy, Acting General Counsel, Department of Veterans Affairs ("VA"), to Abigail Graber, The Jerome N. Frank Legal Services Organization, July 14, 2014). First, the letter acknowledges "the difficulty of producing evidence to prove occurrence of an in-service personal assault" such as military sexual trauma ("MST"), and explains that 38 C.F.R. § 3.304(f)(5) (2014) addresses this difficulty by providing that a broad variety of evidence may be used to "'corroborate the veteran's account of the stressor incident.'" J.A. 4 (quoting 38 C.F.R. § 3.304(f)(5)). The Secretary also emphasizes in its letter that the list of potential sources of evidence in § 3.304(f)(5) is "not exclusive." J.A. 5.

Second, the Secretary's denial letter addresses Petitioners' concern that "'VA adjudicators often misapply the current evidentiary standard,'" and explains several

---

[1] Pub. L. No. 79-404, § 10(e), 60 Stat. 237, 243–44 (1946) (codified as amended at 5 U.S.C. § 706(2)(A) (2012)).

measures the VA has taken to reduce such errors, including the development of "additional guidance and training." J.A. 5 (quoting J.A. 330). The letter notes that the "VA's grant rate for PTSD claims based on MST rose from a rate of 38 percent prior to this training initiative to a rate of 52 percent at the end of February 2013, which was roughly comparable to the 59-percent grant rate at that time for all PTSD claims." J.A. 6 (citation omitted). Third, and relatedly, the letter explains that the VA contacted Veterans whose claims were denied between September 2010 and April 2013, notifying them that claims could be resubmitted for review. J.A. 6.

Although the Secretary's letter responds to some of the issues raised by Petitioners, it does not "explain[] the facts and policy" matters underlying Petitioners' chief concern, namely, the maintenance of *different evidentiary standards* for PTSD claims resulting from MST, and PTSD claims resulting from other stressors. *Preminger v. Sec'y of Veterans Affairs*, 632 F.3d 1345, 1353 (Fed. Cir. 2011) (internal quotation marks and citation omitted). The Secretary's discussion of the flexible nature of the evidentiary requirements of § 3.304(f)(5) is not responsive to this critical issue because it addresses the subsection in isolation, and does not explain what facts or policy concerns might justify the subsection's more stringent corroboration requirement as compared to its neighboring subsections. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (Agency action is arbitrary and capricious when "the agency has . . . entirely failed to consider an important aspect of the problem."). The letter therefore fails to reflect "reasoned decisionmaking" sufficient to explain the Secretary's denial of the Petition for Rulemaking. *Preminger*, 632 F.3d at 1354 (internal quotation marks and citation omitted).

Similarly, while it is commendable that the VA has initiated training and outreach efforts to ensure that MST-based PTSD claims are processed in a "fair, consistent, and thoughtful manner," J.A. 5, these efforts are unrelated to the underlying issue of whether a justification exists for the different evidentiary requirements in 38 C.F.R. § 3.304(f)(5),[2] and consequently for the Secretary's decision to deny the Petition for Rulemaking, *see Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 808 (1973) (An agency has a "duty to explain its departure from prior norms." (citation omitted)); *id.* (The grounds for an agency's departure "must be clearly set forth so that the reviewing court may understand the basis of the agency's action and so may judge the consistency of that action with the agency's mandate."). Training efforts may address the discriminatory effects produced by the different evidentiary standards, but they do not provide a rationale for the differing standards themselves. For the Secretary's denial to be upheld, it must either offer some rationale that could explain the maintenance of different standards for similarly situated claimants, or it must explain why such claimants are in fact not similarly situated. *See Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005) ("Where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its

---

[2]   In 2002, the VA added subsection (f)(3) to § 3.304, which is now codified in subsection (f)(5). *Post-Traumatic Stress Disorder Claims Based on Personal Assault*, 67 Fed. Reg. 10,330 (Mar. 7, 2002). At the time the VA promulgated this subsection, the VA's regulations contained evidentiary standards for non-MST stressors. *See* 38 C.F.R. § 3.304(f) (2001).

action is arbitrary and capricious and cannot be upheld." (citation omitted)).

## II.

An examination of the regulation's text, along with well-accepted principles of administrative law, reveals that we cannot sustain the Secretary's denial of the Petition for Rulemaking. Section 3.304(f) of Title 38 of the Code of Federal Regulations sets forth three requirements for establishing service-connection for PTSD: "[1] medical evidence diagnosing [PTSD] . . . ; [2] a link, established by medical evidence, between current symptoms and an in-service stressor; and [3] *credible supporting evidence* that the claimed in-service stressor occurred." 38 C.F.R. § 3.304(f) (2014) (emphasis added). These requirements apply regardless of the cause of the PTSD.

However, in subsections (1) through (4) of § 3.304(f), "the veteran's lay testimony alone" can constitute "credible supporting evidence." *See* 38 C.F.R. § 3.304(f)(1) (diagnosis of PTSD during service); *id.* § 3.304(f)(2) (combat-related PTSD); *id.* § 3.304(f)(3) (PTSD related to "fear of hostile military or terrorist activity"); *id.* § 3.304(f)(4) (PTSD related to prisoner-of-war status). By contrast, where PTSD is caused by MST, the veteran's lay testimony alone does not constitute "credible supporting evidence," and corroboration of that testimony is required. *See id.* § 3.304(f)(5) (listing numerous non-exclusive examples of the types of evidence that "may corroborate the veteran's account of the [MST-related] stressor incident").[3] The Secretary in its denial letter offers no explanation of the different requirements.

---

[3] Despite the VA's use of the permissive term "may," the agency interprets this regulation to *require*

Instead, the Secretary explains what a veteran must establish under § 3.304(f)(2)–(3).  The denial letter notes that veterans claiming combat-related PTSD must first "establish [under § 3.304(f)(2)] that he or she 'engaged in combat with the enemy,' *i.e.* 'personally participated in events constituting an actual fight or encounter with a military foe or hostile unit or instrumentality.'" J.A. 6 (quoting *Moran v. Peake*, 525 F.3d 1157, 1159 (Fed. Cir. 2008)).  The letter explains that "§ 3.304(f)(3) . . . eliminates the [corroboration] requirement . . . if a stressor claimed . . . is related to . . . fear of hostile military or terrorist activity." J.A. 6.  In its brief, the Secretary adds that "a veteran seeking PTSD benefits as a result of a prisoner of war experience must still establish that he or she was a prisoner-of-war."  Resp't's Br. 29 (internal quotation marks and citations omitted).

These explanations by the Secretary do not address the differential evidentiary requirements imposed by regulation.  As noted, § 3.304(f) requires all claimants who seek to establish service-connection for PTSD to provide "credible supporting evidence that the claimed in-service stressor occurred."  38 C.F.R. § 3.304(f).[4]  Of

---

corroborating evidence in addition to the veteran's testimony.  *See* J.A. 4 ("Your proposal would eliminate the requirement for corroborating evidence."), 49 (discussing the "requirement for seeking markers" from among the § 3.304(f)(5) evidentiary categories); Respondent's Br. 2 (noting the "corroborating evidence requirement for MST claims"), 6 ("[A] veteran's lay testimony *alone*, without any corroboration, is not sufficient [under § 3.304 (f)(5)].").

[4]    Subsections (2) through (4) of 38 C.F.R. § 3.304(f) eliminate the need not for *credible* supporting evidence, but for *corroborating* evidence, *see, e.g.*, J.A. 4, 6, 210, that is, evidence in addition to the veteran's own testimony. *See Evidence: corroborating evidence*, Black's Law Dic-

course, the lay testimony of claimants asserting combat-related, fear-related, or prisoner-of-war related PTSD would not be credible if the claimants were in fact not prisoners of war, or were not involved in combat or situations where the Veteran was confronted with the threat of enemy activity. Similarly, the lay testimony of claimants asserting MST-related PTSD would not be credible if the claimant did not in fact serve in the military. Subsection (f)(5), however, imposes a corroboration requirement *even if* the evidence establishes the claimant served in the military and the claimed in-service stressor is related to that service.

Once it is established that a PTSD claimant was in fact a prisoner of war, or was involved in combat or threatened by enemy activity, that claimant is similarly situated to the claimant seeking service connection for MST-related PTSD who has established service in the military: both were serving in a context where exposure to a specific stressor could—but would not necessarily—occur, *see* J.A. 7, 43, and both must provide "credible supporting evidence that the claimed in-service stressor occurred." 38 C.F.R. § 3.304(f). The difference arises at

---

tionary (10th ed. 2014) ("Evidence that differs from but strengthens or confirms . . . other evidence . . . ."). They also instruct that the veteran's lay testimony alone can constitute the required "credible supporting evidence," but only in the circumstances described in those subsections. *See, e.g.*, No. 09-48 429, 2011 WL 1802066, at *3 (Bd. Vet. App. Mar. 15, 2011) ("Provided . . . the Veteran engaged in 'combat with the enemy,' his lay testimony alone constitutes credible supporting evidence . . . ." (citation omitted)); No. 02-18 881, 2005 WL 3921319, at *2 (Bd. Vet. App. Nov. 17, 2005) ("[A] *noncombat* veteran's testimony alone does not qualify as 'credible supporting evidence' . . . ." (emphasis added)).

this point, when the lay testimony of the claimant for MST-related PTSD will alone be insufficient to establish the occurrence of a specific stressor, whereas the same testimony alone will be sufficient in the case of other claimants. The Secretary has offered no rationale for this distinction.

It may be that the Secretary can offer "facts and policy concerns" that support differential treatment, *Preminger*, 632 F.3d at 1353, but the failure to do so in its denial letter provides no basis for this court to conclude that the decision was not arbitrary, *Williams Gas Processing-Gulf Coast Co., L.P. v. Fed. Energy Regulatory Comm'n*, 475 F.3d 319, 326 (D.C. Cir. 2006) ("Arbitrary and capricious review 'demands evidence of reasoned decisionmaking *at the agency level . . . .*'" (quoting *Kan. City v. HUD*, 923 F.2d 188, 192 (D.C. Cir. 1991)). It is not the job of this court to fill in the gaps in the agency's analysis. The *agency* must explain why a different standard is justified. *See Point Park Univ. v. NLRB*, 457 F.3d 42, 50 (D.C. Cir. 2006) ("Nor can our Court fill in critical gaps in [an agency's] reasoning. We can only look to the [agency's] stated rationale. We cannot sustain its action on some other basis the [agency] did not mention." (citation omitted)); *see also Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005) ("[I]t is well settled that an agency must explain its action with sufficient clarity to permit 'effective judicial review.'" (quoting *Camp v. Pitts*, 411 U.S. 138, 142–43 (1973))); *Mortg. Inv'rs Corp. of Ohio v. Gober*, 220 F.3d 1375, 1378 (Fed. Cir. 2000).

## III.

"There was a time not long ago when courts and legal scholars viewed allegations of rape [and other forms of sexual assault] with automatic suspicion, and judges instructed juries accordingly." *Osburn v. Hagel*, 46 F. Supp. 3d 1235, 1244 n.3 (M.D. Ala. 2014) (citation omit-

ted).  Thankfully, those days are supposed to be behind us, but the Secretary's denial letter provides a reminder of the need to be ever vigilant lest such irrational bias encroach once again into the legal and regulatory sphere. Unfortunately, we are unable to know whether that is the case with respect to 38 C.F.R. § 3.304(f)(5), because no explanation whatsoever has been provided.  Because the Secretary's denial of the Petition for Rulemaking does not describe *any* facts or policy concerns that might justify the disparate evidentiary requirements applied to similarly situated veterans claiming service connection for PTSD, it does not evince reasoned decisionmaking.  I therefore respectfully dissent.